UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEO XAYADETH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:11-cv-00709 - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 19)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF KEO XAYADETH |

Keo Xayadeth ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") improperly evaluated the opinion of her treating physician. Therefore, Plaintiff seeks review of the administrative decision denying her claims for benefits. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED,** and the administrative decision is **AFFIRMED**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income November 1, 2007, alleging disability beginning June 1, 2000. AR at 112-20. The Social Security Administration denied her claim initially and upon reconsideration. *Id.* at 85-88, 92-97. After requesting a hearing, Plaintiff

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

testified before an ALJ on February 23, 2010. *Id.* at 1. The ALJ determined Plaintiff was not disabled, and issued an order denying benefits on March 12, 2010. *Id.* at 31-44. Plaintiff requested review of the ALJ's decision by the Appeals Council of Social Security, which was denied on March 2, 2011. *Id.* at 24-29. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under Title XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. § 416.927.

**A.     Relevant Medical Evidence**

1.     Physician's opinions

Dr. Ekram Michiel performed a psychological consultative examination on March 8, 2008. AR at 214-18. Plaintiff's chief complaint was that she felt sad because she had "severe, constant headaches and pain" for the last two years. *Id.* at 214. She told Dr. Michiel: "I can't sit, I can't stand. I don't sleep good at night because I hear voices calling my name. I wake up because of my pain and I think." *Id.* In addition, Plaintiff informed Dr. Michiel that she did not like to be in therapy because she did not like to be in groups and around people, and said had never been employed. *Id.* Plaintiff reported she was "able to take care of her personal hygiene," as well as "shop, cook and do household chores with the help from her friend." *Id.* at 215.

Dr. Michiel observed Plaintiff "kept good eye contact throughout the interview," and her "[t]hought process was goal-directed. AR at 215-16. He performed an intellectual functioning test by asking Plaintiff to recall three objects; Plaintiff was able to recall two of the three objects in five minutes, and "[r]ecalled the third object by multiple choice." *Id.* at 215. "Based upon the evaluation and observation throughout the interview," Dr. Michiel opined:

> I believe the claimant is able to maintain attention and concentration and to carry out simple job instructions.
>
> The claimant is able to relate and interact with coworkers, supervisors and the general public.
>
> The claimant is unable to carry out an extensive variety of technical and/or complex instructions.

AR at 216. Dr. Michiel diagnosed Plaintiff with a depressive disorder, not otherwise specified, and gave her a global assessment functioning score of 60.[2] *Id.*

Dr. Rustom F. Damania performed an internal medicine evaluation on March 8, 2008. AR at 219-26. Plaintiff reported she had chronic, bi-temporal headaches that had become more frequent in the past two years. *Id.* at 219. She described the pain as sharp and said it lasted all day, with temporary relief from medication. *Id.* In addition, Plaintiff had "uterine fibroids which causes some suprapubic pain" and "bronchial asthma which is generally worse only in the winter." *Id.* Plaintiff told Dr. Damania she "last worked in a bakery." *Id.* at 220. Plaintiff's range of motion in all extremities was within normal limits. *Id.* at 222-23. Further, Dr. Damania found Plaintiff's hand grip was normal, and her strength was "5/5 in all extremities." *Id.* Based upon the examination, Dr. Damania concluded: "Clinically no major objective evidence was found for gross physical impairment. Due to her bronchial asthma she may have some workplace environmental limitations." *Id.* at 223.

Dr. Archimedes Garcia completed a psychiatric review technique form on March 24, 2008. AR at 227-37. Dr. Garcia opined Plaintiff a depressive disorder, not otherwise specified, which was not a severe impairment. *Id.* at 227, 229. According to Dr. Garcia, Plaintiff had mild limitations in her activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. *Id.* at 235. Dr. Garcia noted Plaintiff's reported

---

[2] Global assessment functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.). A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* at 34.

activities of daily living "are essentially intact," and the medical evidence supported "mild limits." *Id.* at 237. Therefore, Dr. Garcia opined Plaintiff's mental impairments were "non severe." *Id.* at 239.

On March 25, 2008, Dr. Roger Fast completed a physical residual functional capacity assessment. *Id.* at 240-44. He opined Plaintiff did not establish any exertional, postural, manipulative, visual, or communicative limitations. *Id.* at 241-43. However, Plaintiff needed to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. *Id.* at 243. Thus, Dr. Fast opined Plaintiff required "asthma precautions." *Id.* at 239.

On June 10, 2008, Dr. Sadda Reddy reviewed the medical evidence of record and agreed with the assessment that respiratory precautions were appropriate. AR at 249. She affirmed the assessment of Dr. Fast "as written." *Id.* Likewise, Dr. Tashjian affirmed the assessment of Dr. Garcia and that Plaintiff's mental impairments were not severe. *Id.*

Dr. Maximo Parayno, Plaintiff's treating physician, completed a mental impairment questionnaire on June 19, 2009. AR at 280-83. Dr. Parayno diagnosed Plaintiff with post-traumatic stress disorder (PTSD) and a chronic severe major depressive disorder, recurrent without psychosis. *Id.* at 280. He noted Plaintiff's response to treatment was "poor" and that she relied upon samples from the office because she could not afford to buy the appropriate medication. *Id.* Dr. Parayno opined her "impaired memory, poor concentration, low self-esteem, depressed mood [and] feeling hopeless" demonstrated the severity of Plaintiff's mental impairment. *Id.* Also, on a checklist of symptoms, Dr. Parayno indicated Plaintiff had mood disturbance, recurrent and intrusive recollections of a traumatic experience, emotional withdrawal or isolation, memory impairment, sleep disturbance, and disorientation to time and place. *Id.* at 281. According to Dr. Parayno, Plaintiff had marked restrictions with the activities of daily living; marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence or pace. *Id.* at 282. Further, Dr. Parayno indicated Plaintiff had "one or two" repeated episodes of decompensation within a twelve-month period, each of at least two weeks duration. *Id.* He opined Plaintiff was completely unable to function independently outside of her home, and her impairments would cause her to be absent from work more than four days per month. *Id.* at 283.

///

2.     Treatment notes

The medical record contains treatment notes from the office of Dr. Parayno dated December 17, 2007 through February 8, 2010.³ AR at 267-79, 286-91. The treatment notes indicate Plaintiff suffered from PTSD and a major depressive disorder (MDD). *See, e.g., id.* at 277-79. On Plaintiff reported she felt hopeless and worthless, but did not have suicidal thoughts. *Id.*; *see also* AR at 286-89. Her memory and concentration appeared poor. *Id.* Plaintiff reported she had poor sleep and suffered nightmares due to "trauma of war." *Id.* at 276.

**B.     Hearing Testimony**

Plaintiff testified before the ALJ with the assistance of an interpreter at a hearing on February 23, 2010. AR at 1, 4. Plaintiff reported she was born in Laos, and she attended school for four years in Laos, and about three months in the United States. *Id.* at 5-6. According to Plaintiff, she studied English when she first came to the United States and "learned the beginning of the alphabet." *Id.* at 6. Plaintiff believed she was unable to work because of "surgery in her uterus" and her "mental problem." *Id.* at 16.

She reported that she was treated by Dr. Parayno prior to 2007, but her impairment "somehow got a little bit better." AR at 7. However, once she went back to work, she started to get worse, and she returned to Dr. Parayno for more treatments. *Id.* Plaintiff testified the medication helped, but did not stop her symptoms. *Id.* at 8. She stated that she saw Dr. Parayno "like once a month." *Id.* In addition, Plaintiff said she saw a therapist for talk therapy "every time" she visited Dr. Parayno's office. *Id.* She explained Dr. Parayno "prescribe[d] the medications and his helper [did] the counseling." *Id.* Plaintiff reported she spent twenty to thirty minutes with the talk therapist each visit. *Id.* Because Plaintiff did not have a driver's license, Plaintiff reported her daughter drove her to the doctor. *Id.* at 13.

Plaintiff testified that she lived with her husband, a friend, and her friend's boyfriend. AR at 11. Plaintiff reported that on an average day, she got up at 8:00 a.m., but "about three times out of the

---

³ Notably, the treatment notes are in the form of a check list psychiatric evaluation on which the treating physician could indicate which symptoms a patient suffered and the level of severity. The hand-written notes which supplement these opinions are, for the most part, illegible.

week" she would "sleep all day." *Id.* at 9-10.  She reported there were times she got "very dizzy and couldn't get up," so she needed help to get out of bed. *Id.* at 9.  Plaintiff estimated she did not bathe or shower "[a]bout three times a week" because her headache was too bad and she did not have anyone to help her. *Id.*  Plaintiff said "most of the time" she had her children help her bathe or shower by putting shampoo in her hair, washing her hair for her, and putting her clothes on when her condition was "real bad." *Id.* at 10.

According to Plaintiff, she made her own meals "[a]bout two or three times per week," but her family did not allow her to cook because she would forget and allow the meal to burn.  AR at 11.  She estimated that she watched television two to three times a week, for about an hour each time. *Id.* at 12.  Plaintiff said went to the grocery store about once a week with her daughter, but being around "[a] lot of people" gave her a headache. *Id.* at 13.  In addition, Plaintiff said she would go for walks around her neighborhood "[f]ive times a day" with her daughter or friends for "[a]bout 30 minutes" each time because fresh air made her "feel good." *Id.*  However, Plaintiff said she was unable to go on these walks an "average three days out of the week." *Id.* at 18.  Further, Plaintiff said she occasionally went to temple with her family. *Id.* at 17.

Plaintiff testified that Dr. Parayno talked to her about getting a job and recommended that she try to work.  AR at 14.  However, Plaintiff believed that she could not work because she had "problems forgetting things." *Id.*  She reported that on two occasions, she tried to get a job by going to a restaurant and asking for a cleaning job. *Id.* at 15.  Plaintiff reported she worked at a restaurant preparing food and cleaning for two months for cash pay about three years before the hearing, but stopped working there because she "[c]ould not stand long." *Id.*

Plaintiff reported she had "some pains" in her abdomen "when lifting heavy things."  AR at 16.  Plaintiff estimated she could lift and carry "[a]round ten pounds . . . but not for a long time." *Id.*  Also, Plaintiff stated she still had difficulty standing for long periods of time but believed she could stand twenty minutes at a time. *Id.* at 16-17.  Further, Plaintiff believed she was able to sit for an hour and walk for a mile. *Id.* at 17.

Vocational expert ("VE") Thomas Daschelette testified after Plaintiff at the hearing.  AR at 18.  The VE characterized Plaintiff's past relevant work as "light and unskilled," and the janitorial work

she performed was "medium and unskilled." *Id.* at 19. The ALJ asked the VE to consider a hypothetical individual who was 49 years old, literate, and had the same past relevant work as Plaintiff. *Id.* In addition, the ALJ explained:

> This individual has a combination of severe impairments and retains the residual functional capacity to lift and carry 100 pounds occasionally [and] 50 pounds frequently. This individual retains the ability to stand, walk and sit six hours each. This individual should avoid concentrated exposure to pulmonary irritants. This hypothetical individual retains the residual functional capacity to perform simple, repetitive tasks as well as maintain attention, concentration, persistence and pace. This individual retains the ability to relate to and interact with others. This individual can also adapt to usual changes in work settings and this individual can adhere to safety rules.

*Id.* at 19-20. The VE opined such an individual would be able to perform Plaintiff's past relevant work, because the Occupational Safety and Health Administration would regulate any exposure to detergents in the janitorial position. *Id.*

Next, the ALJ asked the VE to consider "a hypothetical individual with the same vocational parameters listed in the previous question," but with differing physical and mental limitations. AR at 20. The ALJ asked the VE to assume the individual could lift and carry a maximum of ten pounds, "sit one hour total, stand twenty minutes at a time and walk approximately one mile." *Id.* In addition, the person had "difficulty maintain attention, concentration, persistence and pace as well as difficulty relating to and interacting with others including coworkers, supervisors and the general public." *Id.* The VE opined the "the world of work as normally found," would be "closed." *Id.* at 21.

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity since the application date of November 2, 2007. AR at 36. Second, the ALJ found Plaintiff's severe impairments included a depressive disorder and asthma. *Id.* The ALJ opined her status as post-uterine fibroid tumor was not a severe impairment. *Id.* Plaintiff's impairments did not meet or medically equal a listing. *Id.*

After considering "the entire record," the ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 100 pounds occasionally and 50 pounds frequently, and sit, stand, and/or walk 6 hours each in an 8 hour day." AR at 37. Plaintiff was required to "avoid concentrated exposure to pulmonary irritants such as gases, dusts, fumes, odors, and poor ventilation." *Id.* With

regard to her mental abilities, the ALJ opined Plaintiff was "able to perform simple repetitive tasks; maintain concentration, persistence, and pace; relate to and interact with others; adapt to usual changes in work settings; and adhere to safety rules." *Id*. at 37-38.  With this RFC, Plaintiff was capable of performing work past relevant work as an assembly line worker and janitor.  *Id.* at 40.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  *Id.*

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Parayno, her treating physician.  (Doc. 17 at 4).  According to Plaintiff, "The ALJ has neither offered a legitimate conclusion or a reason why he rejects the opinions of Dr. Parayno documenting [Plaintiff's] severe impairment and resulting limitations."  *Id.* at 5-6.  Therefore, Plaintiff concludes "the ALJ did not properly consider the medical opinion."  *Id.*  On the other hand, Defendant contends the ALJ's properly considered the opinion of Dr. Parayno.  (Doc. 19 at 4-6)

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).

A physician's opinion is not binding upon the ALJ, and may be rejected whether or not the opinion is contradicted by another.  *Magallanes*, 881 F.2d at 751.  Where the opinion of a treating physician is not contradicted, an ALJ must set forth "clear and convincing" reasons to reject the opinion.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  On the other hand, with "specific and legitimate" reasons, supported by substantial evidence in the record, an ALJ may reject the contradicted opinion of a physician.  *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

1 The opinion of a treating physician may be rejected whether or not the opinion is contradicted by
2 another. *Magallanes*, 881 F.2d at 751.

### A. The ALJ set forth specific and legitimate reasons to reject Dr. Parayno's opinion.

Here, the ALJ noted Dr. Parayno's opinion was "not supported by the medical evidence of record or by Dr. Parayno's treatment notes and there is no support in the record for the psychological limits contained in the opinion." AR at 39. Reviewing the findings of the consultative examination, the ALJ determined "Dr. Parayno's conclusions are not consistent with the findings of Dr. Michiel . . . or with the testimony of the claimant." *Id.* Further, the ALJ noted the opinion was presented in a check list form, which was conclusory in nature. *Id.*

Notably, a medical opinion may be rejected when it is "unsupported by the record as a whole." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). Likewise, an opinion may be rejected where there is incongruity between a treating doctor's assessment and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Further, a treating physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion." *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). It follows then that an ALJ may reject opinions that are check-list reports lacking explanations for the conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept a treating physician's opinions that are conclusory and brief, or unsupported by clinical findings or physician's own treatment notes). Thus the reasons set forth by the ALJ were specific, legitimate reasons for rejecting the opinion of Dr. Parayno.

### B. Substantial evidence supports the ALJ's decision to reject Dr. Parayno's opinion.

When contradicted by another physician, the treating physician's opinion may be rejected only with "specific and legitimate reasons for doing so that are based on substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Where an examining physician "provides independent clinical findings that differ from the findings of the treating physician, such findings are

1  substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted). If an ALJ
2  rejects the opinion of a treating physician based on the opinion of a consulting physician, there must
3  be additional evidence in the record to support the decision. *Lester*, 81 F.3d at 832.

4        The opinion of Dr. Michiel, an examining physician, may constitute substantial evidence to
5  support the ALJ's conclusion if he offered independent clinical findings which resulted in (1)
6  diagnoses differing from those offered by the treating physician and are supported by substantial
7  evidence, or (2) findings based on objective medical tests that the treating physician has not
8  considered. *See Orn*, 495 F.3d at 632; *Magallanes*, 881 F.3d at 751. Notably, both Dr. Parayno and
9  Dr. Michiel diagnosed Plaintiff depressive disorders. *See* AR 216, 280. However, Dr. Michiel's
10 evaluation was based, in part, upon objective medical testing conducted during the interview. *Id.* at
11 215-16. For example, he tested Plaintiff's intellectual functioning and memory, and Plaintiff was able
12 to recall two of three objects in five minutes, and "[r]ecalled the third object by multiple choice." *Id.*
13 at 215. Based upon these objective findings and his observations, Dr. Michiel determined Plaintiff had
14 the ability "to maintain attention and concentration and to carry out simple job instructions." *Id.* at
15 216. Therefore, the opinion of Dr. Michiel is substantial evidence to support the ALJ's decision.

16       Further, the opinions of Dr. Garcia and Dr. Reddy, who opined Plaintiff's mental
17 impairments were not severe, support the ALJ's determination that Plaintiff is not disabled as defined
18 by the Social Security Act. *See Tonapetyan*, 242 F.3d at 1149 (the contrary opinion of a non-
19 examining physician is substantial evidence when consistent with other evidence in the record).
20 Accordingly, the ALJ's decision was supported by substantial evidence in the record, including the
21 opinions of Dr. Michiel, Dr. Garcia, and Dr. Reddy.

22                                      **CONCLUSION AND ORDER**

23       For all these reasons, the ALJ's evaluation of the opinion of Dr. Michiel, as Plaintiff's treating
24 physicians, was proper. The ALJ set forth specific, legitimate reasons supported by substantial
25 evidence in the record for rejecting the opinion of Dr. Michiel. Notably, the ALJ's resolution of a
26 conflict in the medical record must be upheld by the court when there is "more than one rational
27 interpretation of the evidence." *Allen*, 749 F.2d at 579; *see also Matney v. Sullivan*, 981 F.2d 1016,
28 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the

evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied the proper legal standards and his findings are supported by substantial evidence. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's motion for summary judgment is **GRANTED**;
2. The decision of the Commissioner of Social Security is **AFFIRMED**; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Keo Xayadeth.

IT IS SO ORDERED.

Dated:   **May 16, 2012**                **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE